NO. 22-50257

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

JOHN GILCHRIST; BYRON BROCKMAN
*Plaintiffs-Appellees*

vs.

SCHLUMBERGER TECHNOLOGY CORPORATION

*Defendant-Appellant*

On appeal from the United States District Court for the
Western District of Texas
The Honorable Lee Yeakel
Case No. 1:16-cv-00008-LY

APPELLEE'S RESPONSE BRIEF

J. DEREK BRAZIEL

Braziel Law Offices, P.C.
f/k/a Lee & Braziel, LLP
1910 Pacific Ave.
Suite 13300
Dallas, Texas 75201
(214) 749-1400 - Telephone
(214) 749-1010 - Facsimile
Attorney for *Plaintiffs-Appellees*

i

# <u>CERTIFICATE OF INTERESTED PERSONS</u>

The following is a complete list of all persons, association of persons, firms, partnerships, corporations, guarantors, insurers, affiliates, parent corporations, or other legal entities who or which are financially interested in the outcome of the litigation:

**Appellees:**

| | |
|---|---|
| Byron Brockman | Jimmy Braziel of Braziel Dixon, L.L.P. Dallas, TX |
| Byron Brockman | Jack Siegel of Siegel Law Group Dallas, TX |
| John Gilchrist | Jimmy Braziel of Braziel Dixon, L.L.P. Dallas, TX |
| John Gilchrist | Jack Siegel of Siegel Law Group Dallas, TX |

**Counsel for Appellees:**

**Appellants:**

| | |
|---|---|
| Schlumberger Technology Corporation | Robert Lombardi of Kullman Firm New Orleans, LA |
| Schlumberger Technology Corporation | Kelly Reese of Kullman Firm, L.L.P. Mobile, AL |

**Counsel for Appellants:**

Respectfully submitted,

*/s/ J. Derek Braziel*
**J. Derek Braziel**
**Texas Bar No. 00793380**
**Braziel Law Offices, P.C.**
**1910 Pacific Ave.**
**Suite 13300**
**Dallas, Texas 75201**
**(214) 749-1400 - Telephone**
**(214) 749-1010 - Facsimile**

**Attorney of Record for**
**Plaintiffs-Appellee**

## STATEMENT REGARDING ORAL ARGUMENT

Appellees request oral argument in this matter because oral argument would materially assist the decisional process. The Court may have questions regarding: (1) the implications on practitioners and courts of various holdings under consideration, (2) counsels' understanding of certain precedential or persuasive authorities, or (3) the filing or lack of filing certain pleadings or other documents in the underlying case.

# **TABLE OF CONTENTS**

Certificate of Interested Persons……………………………………………………ii

Statement Regarding Oral Argument……………………………………………iv

Table of Contents………………………………………………………..v-vi

Table of Authorities………………………………………………...vii-viii

Statement of Jurisdiction………………………………………………....….1

Statement of Issues Presented for Review………………………………………1

Statement of the Case………………………………………………………….2-4

Summary of the Argument………………………………………………….4-5

Standard of Review……………………………………………………………5-7

Argument and Authorities ……………………………………………………7-29

| | |
|---|---|
| **A. Overview of the Standards for FLSA Exemption** | 7-8 |
| **B. Schlumberger Misrepresents the FLSA's Purposes** | 8-10 |
| **C. Appellees Are Not Exempt Under the Standalone Administrative Exemption.** | 10-25 |
| **1. STC Cannot Meet the Requirements of the Administrative Exemption.** | 10-11 |
| **2. Gilchrist and Brockman Were Production Workers Whose Duties Were Not Directly Related to the Management or General Business Operations of Defendant or its Customers.** | 11-16 |
| **i. Appellees' Primary Duty is to Produce the Product/Service Sold by Schlumberger** | 16-17 |
| **ii. Gilchrist And Brockman's Primary Duty Was Not "Quality Control" As Contemplated By § 541.201(B).** | 17-18 |
| **iii. Gilchrist And Brockman Did Not Exercise Discretion and Independent Judgment with Respect to Matters of Significance.** | 18-21 |
| **iv. Troubleshooting Equipment is Not Exempt Work.** | |
| **v. Oilfield Operators Do Not Qualify for the Administrative Exemption (even if you call them "Engineers").** | 21-23 23-26 |

| | |
|---|---|
| **D. Plaintiffs Were Not Exempt Under the Highly Compensated Exemption for Either the Executive or Administrative Exemption.** | 26-28 |
| **E. It is Not Reversible Error For the District Court to Find The Administrative Job Duties at Issue Under The HCE Exemption Do Not Require The Exercise of Discretion and Independent Judgment.** | 28-29 |
| **F. Conclusion and Relief Sought** | 30 |

# Table of Authorities

## Cases

*Anderson v. Mount Clemens Pottery Co.,* 328 U.S. 680, 687–88, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946)……………………………………………………….………..…...8

*Barreraz v. Dennis Energy Servs., Inc.,* No. 7:15-CV-193-DAE, 2016 WL 8711407, at *3 (W.D. Tex. Aug. 19, 2016) …………………………………………..……….. 7

*Bratt v. Cnty. of Los Angeles,* 912 F.2d 1066, 1070 (9th Cir.1990) ………..………15

*Bothell v. Phase Metrics, Inc.*, 299 F.3d 1120, 1129 (9th Cir. 2002)……………………………………………………………..……14, 15, 19

*Boudreaux, et al. v. Schlumberger Technology*, No. 6:14-cv-02267 (W.D. La. July 8, 2014) ……………………………………………………………..……… 3

*Burke v. Cty. of Monroe*, 225 F.Supp.2d 306, 317 (W.D.N.Y. 2002) (quoting 29 C.F.R. § 541.207(a) …………………………………………………………...19, 21, 22

*Clark v. Centene Co. of Tex., L.P.*, 656 Fed.Appx. 688, 691 (5th Cir. 2016) (quoting 29 C.F.R. § 541.203(g)………………………………………………..…………….20

*Dalheim v. KDFW-TV*, 918 F.2d 1220, 1226 (5th Cir. 1990)…………......5, 6, 13, 21

*Davis v. J.P. Morgan Chase & Co.*, 587 F.3d 529, 525 (2d Cir. 2009)……………13

*Dewan v. M-I, LLC,* 858 F.3d 331, 337 (5th Cir. 2017)…………..14, 15, 16, 17, 24

*Elliott v. Dril-Quip, Inc*……………………………………………………25, 26

*Enter. Rent-A-Car Wage & Hour Employment Practices Litig.*, MDL 2056, 2012 WL 2952364 (W.D. Pa. July 19, 2012)……………………………..……………15

*Harvill v. Westward Commc'ns, L.L.C.,* 433 F.3d 428, 441 (5th Cir. 2005) ……....8

*Hewitt v. Helix Energy Sols. Group, Inc.,* 15 F.4th 289, 302 (5th Cir. 2021), cert. granted, 212 L. Ed. 2d 762, 142 S. Ct. 2674 (2022) ………………………………10

*Mascagni v. Schlumberger Tech. Corp.*, No. CV 16-439, 2017 WL 3648315, at *6 (W.D. La. Aug. 22, 2017)……………..……………………………………...….23

*Newton v. City of Henderson,* 47 F.3d 746, 748 (5th Cir.1995)……………………..8

*Overnight Motor Transp. Co. v. Missel,* 316 U.S. 572, 578, 62 S.Ct. 1216, 86 L.Ed. 1682 (1942)……………………………………………………………………………9

*Pye v. Oil States Energy Servs., LLC*………………………………………...….24

*Samson v. Apollo Res., Inc.,* 242 F.3d 629, 636 (5th Cir. 2001)……………………8

*Smith v. Ochsner Health Sys.*, 956 F.3d 681 (5th Cir. 2020)……………….....28, 29

*Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985)…………………………………………………………………………..9

*Zannikos v. Oil Inspections (U.S.A.), Inc.*, 605 Fed.Appx. 349, 352 n.1 (5th Cir. 2015)……………………………………………………………………………20

**Statutes**
29C.F.R.§ 541.200(a)(3)……………………………………………..………18
29 U.S.C. § 207(a)(1)……………………………………………………………8
29 C.F.R. § 541.201(a)……………………………………………………11, 12
29 C.F.R. § 541.201(b)……………………...…………………………………13
29 C.F.R. § 541.202(c)……………………………………………………………19
29 C.F.R. § 541.202(e)……………………………………………………………26
29 C.F.R. § 541.202(a)……………………………………………………………20
29 C.F.R. § 541.601(a)……………………………………………………………26
29 C.F.R. § 541.700(a)……………………………………………………11, 12
29 C.F.R. § 541.704……………………………………………………………20

Rules
69 Fed. Reg. 22122, 22141 (Apr. 23, 2004)…………………………………13

## STATEMENT OF JURISDICTION

The Court has jurisdiction over this cause because Plaintiffs John Gilchrist and Byron Brockman's claims arise under the laws of the United States, the Fair Labor Standards Act "("FLSA"). *See* 28 U.S.C. § 1331.

This Court has appellate jurisdiction over this civil appeal because it is a timely appeal, and the appeal is taken from a district court within the Fifth Circuit Court of Appeals geographical jurisdiction. *See* 28 U.S.C. § 1291; FED. R. APP. P. 4(a).

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.    Whether it is reversible error for the District Court to have determined the duties performed by Appellees did not include "the exercise of discretion and independent judgment with respect to matters of significance" its analysis of the Highly Compensated Employee exemption.

2.    Whether the district court correctly determined that the HCE exemption did not apply to Plaintiffs based upon its finding that they did not perform any work directly related to the general business operations of STC or its customers.

3.    Whether the district court committed clear error in its factual findings that the Plaintiffs did not perform certain job duties which would render them exempt from overtime compensation under the HCE exemption.

**STATEMENT OF THE CASE**

This appeal arises from a judgment of the Western District of Texas (Yeakel, J), following a three-day bench trial in a Fair Labor Standards Act ("FLSA") case. The District Court ruled in favor of Plaintiffs based upon the district court's determination that Schlumberger Technology Corporation ("STC") did not establish that Plaintiffs were exempt employees under the FLSA, and that they were therefore entitled to receive damages for unpaid overtime. Judge Yeakel's decision was based on his assessment of the facts as presented by the witnesses and based on his assessment of the credibility of the witnesses.  The judgment was well-reasoned, contained no error, and should be upheld.

The trial of this matter began on August 13, 2018 and concluded on August 15, 2018.  The three year delay in getting a decision was largely the result of STC's litigation choices in this case.  As the Parties were preparing to attend oral argument concerning the entry of judgment, Plaintiffs were made aware that Defendants had failed to identify in discovery the identity of a two former employees, one of which oversaw the compensation department during the relevant time period and a document he authored which seems to recommend the positions held by Plaintiffs should be classified as nonexempt.  The use of the term "seems" is appropriate because although this information was kept from the Gilchrist Plaintiffs altogether, the two witnesses and the documents at issue were identified by Schlumberger in a

companion case, *Boudreaux, et al. v. Schlumberger Technology*, No. 6:14-cv-02267 (W.D. La. July 8, 2014).  Plaintiffs sought to reopen the evidence given the failure to disclose or include the information on a privilege log.  *See generally,* ROA 2029-2283.  Because the issue was being litigated in the *Boudreaux* case, Judge Yeakel ultimately decided to hold off on a decision in the present case to allow the *Boudreaux* court to decide the fate of the information which Schlumberger claimed was attorney-client privileged information.

The motion to reopen the evidence in this case was filed on November 9, 2018.  Subsequently, the *Boudreaux* district court sided with the *Boudreaux* plaintiffs, but STC appealed, and the Fifth Circuit reversed.  Judge Yeakel's decision was issued on December 15, 2021.  Also in that same time frame from November 2018 to December 2021, COVID happened, thus causing additional delay.  Judge Yeakel is a very conscientious and thoughtful judge.  Schlumberger notes in the "Statement of the Case" section of its brief that there was a three year passage of time before the decision in this case was issued.  The implication of this statement in the context of the brief is that this Court should question the district court's findings of fact and credibility determinations.  The suggestion is baseless and dishonors the district court.

The district court's Initial Findings of Fact and Conclusions of Law issued on December 15, 2021 ("Initial Findings and Conclusions") and issued a Final

Judgment ("Final Judgment") based upon its Initial Findings of Fact and Conclusions (collectively "Orders"). ROA.2730-2748; ROA.2774-2776. In the Orders, the district court concluded that the Plaintiffs did not qualify for the highly compensated employee ("HCE") exemption under the FLSA based upon its finding that they did not customarily and regularly perform the duties and responsibilities required by the HCE. There was no reversible error in the District Court's findings of fact or conclusions of law.

## SUMMARY OF THE ARGUMENT

This Court should uphold the District Court's decision. The determination of an applicable exemption under the FLSA is a very fact intensive inquiry. Judge Yeakel was thorough, well-reasoned, and committed no reversible error. The factual findings and the inferences to be drawn from the factual findings are questions of fact and are not subject to reversal unless there is clear error. The District Court made factual findings supported by the record and noted Appellant's failure to prove Gilchrist and Brockman are exempt.

Appellant's strongest exemption argument is under the HCE exemption. Nevertheless, because the District Court found that the work being performed by the two Appellees was not related to the general business operations of STC or its customers and that STC failed to show that exempt work was performed "customarily and regularly" the vast majority of STC's affirmative defenses do not

apply. The Court should affirm the decision of the District Court in all respects.[1]

## STANDARD OF REVIEW

Appellee disagrees with the standards set forth in Appellant's brief. While they may state portions of the standards accurately, when it comes to the FLSA, the specifics of the standards differ from those cited by Schlumberger.

The Fifth Circuit has long recognized that the determination as to "whether an employee is exempt under the [FLSA] is primarily a question of fact which must be reviewed under the clearly erroneous standard." *Cheatham v. Allstate Ins. Co.*, 456 F.3d 578, 584 (5th Cir. 2006). Though, "[t]he ultimate decision ... is a question of law." *Dalheim v. KDFW-TV*, 918 F.2d 1220, 1226 (5th Cir. 1990). The Fifth Circuit's *Dalheim* decision sets forth the proper standards:

> A district court attempting to determine whether an employee is exempt under § 13(a)(1) must make findings of fact and conclusions of law analogous to those involved in determining employee status. First, the court must make findings of historical fact. In this case, for example, the district court found that a reporter's script for a story is subject to review by the producer. Challenges to these "factual findings relative to work tasks and responsibilities" are governed by the longstanding rule that the " 'determination as to whether an employee is exempt under the [FLSA] is primarily a question of fact which must be reviewed under the clearly erroneous standard.' " Thus, to the extent that KDFW challenges the district court's findings of historical fact, KDFW must demonstrate clear error to prevail.
>
> Second, the court must draw inferences from those facts in applying the regulations and interpretations promulgated under §

---

[1] To the extent some of STC's arguments were addressed in the district court decision, Appellees incorporate the decision by reference for the sake of brevity.

13(a)(1). For example, whether an employee's work is "original and creative" in character and whether such work is an employee's "primary duty" are based on inferences from historical facts. Such inferences are also reviewed for clear error.

Finally, the district court must make the ultimate determination of whether an employee is exempt. That conclusion, though based on both historical fact and factual inferences, is properly characterized as a conclusion of law, subject to plenary review.

We are mindful of our duty to give the record "a careful and fitting examination" and to "ensure that the factfinding of the district court is performed with the proper legal standards in mind." Even so, the inquiry into exempt status under § 13(a)(1) remains intensely factbound and case specific. In the great majority of cases, the district court's findings of fact and the inferences it draws, if carefully set forth and supported by the record, will all but compel the legal conclusion that a given employee is or is not exempt. Absent some fundamental legal error, those conclusions will usually stand undisturbed on appeal.[28]

*Dalheim v. KDFW-TV*, 918 F.2d 1220, 1226–27 (5th Cir. 1990). Appellants correctly state that findings of fact are reviewed for clear error. Appellants correctly state that conclusions of law are reviewed *de novo*. For reasons which will become apparent, Appellant's glaring omission of any discussion of the standard of review for the inferences to be drawn from "historical" facts in the context of the FLSA is problematic for Schlunberger. Such inferences, like historical facts, are reviewed for clear error. *See Dalheim*.

Appellants brief also seems to contradict itself concerning the applicable standards. Appellants state, "whether the district court erred by determining that the HCE exemption did not apply to Plaintiffs based upon its finding that they did not perform any work directly related to the general business operations of STC or its

customers" is a legal question. Br. at 7. In the very next paragraph, Appellant states it is "appealing the district court's determination that under the facts presented at trial Plaintiffs did not meet the requirements of the HCE exemption either because…(3) Plaintiffs work did not affect or was not related to the general business operations of STC or its customers." STC contends this inquiry, which appears to be a re-worded version of the issue in the previous paragraph is reviewed under the clearly erroneous standard. Appellee contends that a finding of what work was performed, and the inference drawn about the nature of that work and whether it affects or is related to the general business operations of STC or its customers is reviewed under the clearly erroneous standard.

## ARGUMENT & AUTHORITIES

### A. Overview of the Standards for FLSA Exemption

Appellees proved at trial (or by stipulation) their prima facie case of entitlement to overtime pay. Specifically, Appellees showed, and Appellants did not appeal that Gilchrist and Brockman were (1) employed by the defendant; (2) engaged in commerce or in the production of goods for commerce, or [defendant was] an enterprise engaged in commerce or in the production of goods for commerce; (3) worked a workweek in excess of forty hours; and (4) received compensation less than one and one-half times his regular rate. 29 U.S.C. § 207(a)(1); *Barreraz v. Dennis Energy Servs., Inc.,* No. 7:15-CV-193-DAE, 2016 WL

8711407, at *3 (W.D. Tex. Aug. 19, 2016); s*ee also Harvill v. Westward Commc'ns, L.L.C.,* 433 F.3d 428, 441 (5th Cir. 2005) (citing *Anderson v. Mount Clemens Pottery Co.,* 328 U.S. 680, 687–88, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946)); *Newton v. City of Henderson,* 47 F.3d 746, 748 (5th Cir.1995).

Once the employee establishes a *prima facie* case, the burden then shifts to the employer who "has the burden of proving that the employee falls within the claimed exempted category." *Samson v. Apollo Res., Inc.,* 242 F.3d 629, 636 (5th Cir. 2001). As the District Court correctly decided, Appellants have failed to meet their burden of proof on the affirmative defense of exemption.

## B. Schlumberger Misrepresents the FLSA's Purposes

Schlumberger starts its attack on the District Court's decision by misrepresenting the purpose of the FLSA. It does so by selectively citing to only one of the FLSA's purposes. Schlumberger contends the FLSA is designed to help the "unprotected, unorganized and lowest paid of the nation's working population…" Br. p. 9 fn 2. This is a truthful statement…as it relates to the minimum wage requirements of the FLSA, but that's only part of the story. Appellants willfully omit any discussion about the purposes of the FLSA's overtime provisions to capitalize on the common misconception that highly paid employees

are not entitled to overtime because they are well paid.[2]

Appellants want the optics of this case to appear as though individuals who are already well-paid are being greedy by asking for overtime pay because the FLSA exists only to help low wage workers. That is patently false. The Supreme Court has recognized that one of the other purposes of the FLSA was to spread employment by making it more expensive to work an employee longer hours than to hire a second employee. *Overnight Motor Transp. Co. v. Missel,* 316 U.S. 572, 578, 62 S.Ct. 1216, 86 L.Ed. 1682 (1942), superseded by statue on other grounds as stated in *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985)

As this Court has recently stated:

> To begin with, the Supreme Court, our court, and the Secretary of Labor have all observed that "employees are not to be deprived of the benefits of the [FLSA] simply because they are well paid." *Jewell Ridge Coal Corp*, 325 U.S. at 167, 65 S.Ct. 1063. *See also Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 741 n.18, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981) (same); *Parrish v. Premier Directional Drilling*, 917 F.3d 369, 388 (5th Cir. 2019) (same); 69 Fed. Reg. 22,122-01 (2004) (same). In *Parrish*, for example, we granted overtime status to workers paid *more* than Hewitt—pay that "could well exceed $1,000 per day," 917 F.3d at 384, totaling over "$300,000 per year," 280 F.

---

[2] Courts and practitioners should also recognize that in scenarios like the present case, workers work 12 hour shifts seven days per week when they are in the oilfield. That is 84 hours per week plus untold hours spent traveling to and from remote well locations. They then get the privilege of being away from their families for long periods of time while staying in luxurious mancamps, trailers where they get to sleep in a "hot cot," or in shared hotel rooms. High wage rates are not always attributable to being high level employees, but can also be explained in part by market forces such as a labor shortage or the economic considerations of workers who would not take the jobs because of safety or comfort concerns unless they are paid higher rates to offset those concerns.

Supp. 3d 954, 962 (W.D. Tex. 2017). Congress has likewise rejected efforts to impose income limits on FLSA overtime protections. *See ante*, at 290–91 (citing examples).

*Hewitt v. Helix Energy Sols. Group, Inc.*, 15 F.4th 289, 302 (5th Cir. 2021), *cert. granted*, 212 L. Ed. 2d 762, 142 S. Ct. 2674 (2022). The Court went on to say:

> Moreover, the notion that highly compensated employees should never be entitled to overtime **conflicts with the position of every member of this court**. We all agree—and Helix concedes— that **FLSA** regulations impose a three-prong test for exempting highly compensated employees. Under that three-prong test, it is not enough that an employee is highly compensated. The employee must also perform certain duties, as well as satisfy the salary-basis test. A high income alone is never enough to exempt an employee from overtime. *See*, *e.g.*, 29 C.F.R. § 541.601(d) ("This section applies only to employees whose primary duty includes performing office or non-manual work. Thus, [certain workers] are not exempt under this section *no matter how highly paid they might be*.") (emphasis added).

*Helix*, at 302. This Court has already held specifically that high pay by itself does not exempt employees from the FLSA's overtime requirements. Appellants attempt to reframe the narrative through selective citation or by lying by omission should be rejected.

## C. Appellees Are Not Exempt Under the Standalone Administrative Exemption.

### 1. STC Cannot Meet the Requirements of the Administrative Exemption.

To establish the administrative exemption (29 C.F.R. § 541.200), the employer must prove: (1) the employee was paid on a salary basis; (2) the employee's primary duty must be the performance of office or non-manual work

directly related to the management or general business operations of the employer or the employer's customers; and (3) the employee's primary duty must include the exercise of discretion and independent judgment with respect to matters of significance. *See* 29 C.F.R. § 541.200(a)(1)-(3).  It is important to note that under the administrative exemption, the term "primary duty" is included in both duties prongs of the exemption.

2. **Gilchrist and Brockman Were Production Workers Whose Duties Were Not Directly Related to the Management or General Business Operations of Defendant or its Customers.**

To put a fine point on it, Plaintiffs were very clearly production workers who were charged with producing the very product Schlumberger sold to its clients and, for that matter, they were a part of producing the products and services their customers sold to others.   "To qualify for the administrative exemption, an employee's **primary duty** must be the performance of work **directly related to the management or *general* business operations** of the employer or the employer's customers." 29 C.F.R. § 541.201(a) (emphasis added).

"[P]rimary duty' means the principal, main, major or most important duty that the employee performs." 29 C.F.R. § 541.700(a). "As a general rule, an employee's 'primary duty' involves over 50% of the employee's work time." *Lott v. Howard Wilson Chrysler-Plymouth, Inc.*, 203 F.3d 326, 331 (5th Cir. 2000).   The determination of the employee's primary duty is based upon "all the facts in a

particular case, with an emphasis on the character of the employee's job as a whole." 29 C.F.R. § 541.700(a); *see Lott*, 203 F.3d at 331 ("[F]lexibility is appropriate when applying this rule, depending on the importance of the managerial duties as compared with other duties, frequency of exercise of discretionary power, freedom from supervision, and comparative wages.").

The work that must be performed to be exempt work must relate to the **GENERAL** business operations of the company or its customers. STC tries to bamboozle the Court (and the witnesses at trial) by loosely referring to things like "drill[ing] wells that produce oil and gas" as "general" business operations when that is not how the phrase is defined or applied under the DOL regulations. See Trial Tr. (v.1), at 82:6-14. However, to do work directly related to the management or general business operations of the employer, "an employee must perform work directly related to assisting with the **running** or **servicing** of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment." 29 C.F.R. § 541.201(a) (emphasis added); DOL, Wage & Hr. Div., Adm'r Interp. No. 2010-1, at *2 (Mar. 24, 2010). The regulations provide specific examples of qualifying activities:

> Work related to management or general business operations of an employer includes work in functional areas such as tax; finance; accounting; budgeting; auditing; insurance; quality control; purchasing; procurement; advertising; marketing; research; safety and health; personnel management; human resources; employee benefits; labor relations; public relations, government relations; computer network,

> internet and database administration; legal and regulatory compliance; and similar activities.

29 C.F.R. § 541.201(b). As these "functional areas" make clear, the administrative "exemption is intended to be limited to those employees whose duties relate to the administrative as **distinguished from the production operations of a business**." 69 Fed. Reg. 22122, 22141 (Apr. 23, 2004) (quotations omitted) (emphasis added). "Thus, [the administrative exemption] relates to employees whose work involves **servicing the business itself** …." *Id.*; *see also* DOL, Adm'r Interp. No. 2010-1, at *3 (Mar. 24, 2010) ("This production versus administrative dichotomy is intended to distinguish between work related to the goods and services which constitute the business' marketplace offerings and work which contributes to running the business itself.'" (quotations omitted)); *Davis v. J.P. Morgan Chase & Co.*, 587 F.3d 529, 525 (2d Cir. 2009) ("[W]e have drawn an important distinction between employees directly producing the good or service that is the primary output of a business and employees performing general administrative work applicable to the running of any business."); *Dalheim v. KDFW-TV*, 918 F.2d 1220, 1230 (5th Cir. 1990) ("The distinction [the dichotomy] draws is between those employees whose primary duty is administering the business affairs of the enterprise from those whose primary duty is producing the commodity or commodities, whether goods or services, that the enterprise exists to produce and market."); DOL Wage & Hr. Op. Letter No. FLSA2005-21 (Aug. 19, 2005) (same).

Stated otherwise, the administrative exemption relates to employees who "can be described as **staff rather than line employees**, or as functional rather than departmental heads." Wage and Hour Div., U.S. Dep't of Labor, "Executive, Administrative, Professional … Outside Salesman" Redefined: Report and Recommendations of the Presiding Officer at Hearings Preliminary to Redefinition 27 (1940) (the "Stein Report") (Emphasis added). The administrative exemption is limited to employees who have "miscellaneous policy-making or policy-executing responsibilities" but who do not give orders to other employees. Stein Report, at 4.

To qualify for exemption, the employee's ***primary duty*** must be to provide advice directed to "matters that involve **policy determinations**, *i.e.,* how a business should be run or run more efficiently, not merely providing information in the course of the customer's daily business operation." *See Dewan v. M-I, LLC,* 858 F.3d 331, 337 (5th Cir. 2017) (emphasis added); *Spangler v. Mourik, L.P.*, No. CV H-16-0349, 2017 WL 3412117, at *9 (S.D. Tex. Aug. 8, 2017) (same)." Generally, this requires an exempt employee to participate in important staff functions of the employer or the employer's clients or customers as opposed to the production function." *Id.*

In *Bothell v. Phase Metrics, Inc.*, 299 F.3d 1120, 1127 (9th Cir. 2002)—the approach adopted by the current regulations (DOL Final Rule, 69 Fed.Reg. at 22141)—the Ninth Circuit emphasized that the employees' work must relate to the employer's **general** business operations, and not simply any business operations.

There, the court explained the "requirement is met if the employee engages in running the business itself or determining its overall course or policies, not just in the day-to-day carrying out of the business' affairs." *Phase Metrics*, 299 F.3d at 1125 (quotation and citation omitted). Thus, employees are not administratively exempt if their work involves their employer's day-to-day functioning but does not engage with the broader issues of the employer's "course or policies."

In *Dewan v. M-I, LLC*, the Fifth Circuit examined the administrative exemption's application to drilling fluid specialists, or "mud engineers." 858 F.3d 331 (5th Cir. 2017). In reversing a summary judgment in favor of the employer, the Fifth Circuit made clear that the administrative exemption applies when the employee is involved with "administering the business affairs of the enterprise," not with "producing the commodity of the business." *Id.* at 337. Put otherwise, work "that is primarily functional rather than conceptual does not meet the standard." *Id.* at 338.

Courts distinguish exempt "administrative" employees from "production" employees who perform administrative tasks by determining whether the employees are engaged in the "running of the business and not merely ... the day-to-day carrying out of its affairs." *Bratt v. Cnty. of Los Angeles,* 912 F.2d 1066, 1070 (9th Cir.1990); *In re Enter. Rent-A-Car Wage & Hour Employment Practices Litig.*, MDL 2056, 2012 WL 2952364 (W.D. Pa. July 19, 2012) (same).

The Fifth Circuit reinforced this point in *Dewan*. The "directly related" requirement "is not [focused] on a general concept of advice or consultancy but rather on policy determinations [for] how a business should be run or run more efficiently." *Dewan*, 858 F.3d at 337. Just a few weeks later, the Ninth Circuit confirmed the "directly related" requirement is met "if the employee engages in running the business itself or determining its overall course or policies, not just in the day-to-day carrying out of the business' affairs." *McKeen-Chaplin v. Provident Savings Bank, FSB*, 862 F.3d 847, 851 (9th Cir. 2017) (reversing summary judgment against plaintiffs and rendering judgment in plaintiffs' favor).

  **i.** **Appellees' Primary Duty is to Produce the Product/Service Sold by Schlumberger**

After hearing the testimony at trial and reviewing the transcript, it should be clear that Appellees' primary duty as MWD workers is to "be the eyes of the drill" by producing and providing accurate drilling survey results to Schlumberger's customers. ROA 3237-3242. But unlike a spotter or a person directing an airplane on a tarmac, the MWD workers do not take what they see and then formulate a plan of what to do next. Gilchrist and Brockman did even less than that because they merely gathered data and passed it on to the directional driller who would in turn tell the actual driller if any course correction was needed. *Id.* As Appellant's own witness verified, Schlumberger provides directional drilling information to the company doing the actual drilling. *Id.* The drilling company in turn, provides to an

operator like Exxon, a well that has been drilled in accordance with the drilling plan. *Id.* The rigging up of the MWD equipment, putting it down the hole, looking at the survey results, and troubleshooting issues to get a good reading or correct the results, are all a part of producing and providing accurate drilling survey results. This is the very product Schlumberger sells to its customers as defense witness Hogan admits. ROA 3241-3242 Not only is that product what is sold by STC, but that product is also an "essential" part of the production process in what the driller sells to companies like Exxon – a drilled hole that meets the specifications required. ROA 3239-3240 There can be no doubt which side of the administrative/production line Plaintiffs fall as MWDs. The decision of the District Court in finding that Appellees did not perform work related to the general business operations of STC or STC's customers is well supported in the record and constitute factual inferences which can only be reversed for clear error.

### ii. Gilchrist And Brockman's Primary Duty Was Not "Quality Control" As Contemplated By § 541.201(B).

STC cannot fit Gilchrist and Brockman into the administrative exemption because their <u>primary duty</u> is not "quality control." The Fifth Circuit rejected the same argument STC attempts here in *Dewan v. M-I, L.L.C.*, where the same counsel representing STC was representing STC's sister company. 858 F.3d 331 (5th Cir. 2017). In that case, the employer argued all the work performed by a drilling fluid specialist was directly related to monitoring the drilling mud for quality control. *Id.*

at 337. The Fifth Circuit, however, noted that section 541.201(b) "identifies functional areas that are directly related to management and includes 'quality control' in a list that also contains 'areas such as tax; finance; accounting; budgeting; auditing; insurance; … purchasing; procurement;' and others." *Id.* The Fifth Circuit explained the "regulation's reference to 'quality control,' particularly considering the list of which it is a part, seems to mean the quality of the mud being provided to M-I's customers and not with monitoring and adding materials to the mud as it is being used in drilling wells to ensure that its properties stay within the specifications set forth in the mud plan developed by project engineers." *Id.* Likewise, section 541.201(b)'s reference to "quality control"—as applied to MWDs—does not include monitoring logging data as it is being produced during drilling to ensure it is within a range of values set by the well plan and, when it is not, providing that information to the MWD's coordinator, well planner, directional driller, company man, and so on.

### iii.    Gilchrist And Brockman Did Not Exercise Discretion And Independent Judgment With Respect to Matters of Significance.

To meet its burden under the administrative exemption, STC must also show that Gilchrist's and Brockman's **primary duty** must include the exercise of discretion or independent judgment **with respect to matters of significance**. 29 C.F.R. § 541.200(a)(3).

Courts and the DOL have long recognized, "Perhaps the most frequent cause of misapplication of the term 'discretion and independent judgment' is the failure to distinguish it from the use of skill in various respects." *See*, *e.g.*, *Burke v. Cty. of Monroe*, 225 F.Supp.2d 306, 317 (W.D.N.Y. 2002) (quoting 29 C.F.R. § 541.207(a)). "The fact that [Gilchrist and Brockman's] work required a great deal of specialized knowledge and skill is not determinative." *Bothell v. Phase Metrics, Inc.*, 299 F.3d 1120, 1129 (9th Cir. 2002). The law "specifically warn[s] against confusing 'the exercise of discretion and independent judgment' with 'the use of skill in applying techniques, procedures, or specific standards.'" *Id.* "An employee who merely applies his knowledge in following prescribed procedures or determining which procedure to follow, or who determines whether specified standards are met or whether an object falls into one or another of a number of definite grades, classes, or other categories, with or without the use of testing or measuring devices, is not exercising discretion and independent judgment[.]" *Burke*, 225 F.Supp.2d at 317-18. "This is true even if there is some leeway in reaching a conclusion, as when an acceptable standard includes a range or a tolerance above or below a specific standard." *Id.*

"[T]he exercise of discretion and independent judgment involves the comparison and evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered." 29 C.F.R.

§ 541.202(c). It "implies that the employee has authority to make an independent choice, free from immediate direction or supervision." *Id.* § 541.202(b). Employees exercise little or no discretion or independent judgment when, for example, they perform duties using the company's checklist, apply standards from company manuals, and issue recommendations, without the discretionary ability to resolve disputes. *See Zannikos v. Oil Inspections (U.S.A.), Inc.*, 605 Fed. Appx. 349, 352 n.1 (5th Cir. 2015). Employees who are merely employing "techniques and skills acquired by special training or experience" are not exercising discretion and independent judgment even if they "'have some leeway in the performance of their work … within closely prescribed limits.'" *Clark v. Centene Co. of Tex., L.P.*, 656 Fed. Appx. 688, 691 (5th Cir. 2016) (quoting 29 C.F.R. § 541.203(g)).

"The term 'matters of significance' refers to the level of importance or consequence of the work performed." 29 C.F.R. § 541.202(a). For instance:

> The exercise of discretion and independent judgment must be more than the use of skill in applying well-established techniques, procedures or specific standards described in manuals or other sources.

*See* 29 C.F.R. § 541.704. The exercise of discretion and independent judgment also does not include clerical or secretarial work, recording or tabulating data, or performing other mechanical, repetitive, recurrent or routine work. An employee who simply tabulates data is not exempt, even if labeled as a "statistician." *See id.* § 541.202(e).

It is also not enough that an employer may suffer "serious consequences" (such as financial loss) if the employee fails to do the job properly. *Id.* § 541.202(f); *see also Dalheim v. KDFW-TV*, 918 F.2d 1220, 1231 (5th Cir. 1990) ("[T]he fact that a worker's poor performance may have a significant profit-and-loss impact is not enough to make that worker an exempt administrator."). And the regulations likewise specifically provide that "an employee who operates very expensive equipment does not exercise discretion and independent judgment with respect to matters of significance merely because improper performance of the employee's duties may cause serious financial loss to the employer." 29 C.F.R. § 541.202(f).

### iv.    Troubleshooting Equipment is Not Exempt Work.

Defendant contends that the troubleshooting functions performed by MWDs is exempt work. It is not. In *Burke v. Cty. of Monroe*, the plaintiff, a network administrator, testified that his duties consisted of:[3]

- Troubleshooting, which involves starting at one end of the problem and going through step by step until all of a sudden things stop working, identifying where the problem is.

- Administering servers, which meant that he added new printers to Novell servers using the built-in software to type in data into the operating system's database, allowing the new printers to communicate with the file server.

- Administering also included adding new users by utilizing the Novell software utility for that purpose.

---

[3] 225 F. Supp. 2d 306, 308-09 (W.D.N.Y. 2002).

- Installing the Novell software, which consisted of putting the compact disc in the machine and copying the operating system onto the server's hard drive.

- Maintaining the Novell software, which meant installing the latest updates to the software, including service patches.

- Advising the micro computer group about how to configure new computers for use on the network, which was accomplished by consulting Novell manuals and finding the optimum settings.

Based upon this evidence, the court ruled that the plaintiffs' work did not involve discretion and independent judgment:

> [T]hey were not, 'normally and recurrently ... called upon to exercise and [did] exercise discretion and independent judgment in the day-to-day performance of [their] duties,' 29 C.F.R. § 541.207(g). They did not decide what software was loaded, or whether to update the software on a particular system. They performed highly-skilled work when troubleshooting problems, but this is not evidence of discretion and independent judgment. *See* 29 C.F.R. § 541.207(c)(1). Their functions consisted primarily of following established standards to set-up and maintain computers and networks, following recommended procedures for troubleshooting and essentially performing functions more analogous to key punch operators than programmers.

*Burke*, 225 F.Supp.2d at 320-21.

Likewise, in *Berg v. United States*, plaintiffs, electronic technicians in the air traffic control center of Edwards Air Force Base, testified that their job duties consisted of daily certification of equipment and corrective maintenance as necessary. 49 Fed.Cl. 459 (2001). They testified that, in performing these duties:[4]

---

[4] *Id.* at 477.

22

- In troubleshooting equipment, they "basically follow[ed] a set of guidelines."

- They were largely tied to step-by-step procedures as they checked, maintained, repaired, modified, and certified equipment.

- Work performance was based on procedures in technical manuals, troubleshooting flow charts, and diagnostics.

- Daily equipment certification was pursuant to step-by-step procedures and FAA standards.

- Preventive maintenance, equipment calibration, and equipment modifications and configurations, were all performed pursuant to established procedures.

The Court of Claims determined, "Although plaintiffs were highly skilled in following prescribed procedures for the maintenance and repair of equipment, the defendant has failed to demonstrate that the plaintiffs frequently exercised discretion and independent judgment in performing their normal day-to-day work." *Id*. "**There is a difference between one who merely works around the place and one who has something to say about running the place**." *Id*. at 478 (internal quotations omitted) (emphasis added).

## v.  Oilfield Operators Do Not Qualify for the Administrative Exemption (even if you call them "Engineers").

The Department of Labor has determined MWDs are **not exempt** under either the administrative or highly compensated exemptions. STC already had a motion for summary judgment with respect to the MWD position. *See Mascagni v. Schlumberger Tech. Corp.*, No. CV 16-439, 2017 WL 3648315, at *6 (W.D. La. Aug.

22, 2017) (denying summary judgment under the default and highly compensated employee tests for administrative employees and noting, *inter alia,* the MWD position is "unique to [the oil and gas] industry and unlike other jobs with universal applicability regardless of industry (i.e. compliance officers or human resource managers)"). And the Fifth Circuit reversed a summary judgment in favor of MI-Swaco with respect to mud "engineers." *Dewan*, 858 F.3d at 332. These cases are not alone.

In *Pye v. Oil States Energy Servs., LLC*, the defendant argued that the plaintiff, an oil field tool operator, exercised discretion and judgment "by analyzing data readout and evaluating the performance of the tool versus the drilling plan," and "was charged with evaluating the possible causes" if the tool was not "operating correctly," using "discretion, experience, and judgment." 233 F.Supp.3d 541, 561 (W.D. Tex. 2017). The plaintiff testified, however, that he "took direction from the company man" who "directed and authorized the actions" with "respect to the well and the equipments"[151] and with the "pressure information learned from the line boss"—in consideration of "parameters set by Defendant for how high the pressure could be"—if "the pressure went outside these parameters, [plaintiff] would open a bleed-off value by turning a handle on the equipment to relieve pressure." *Id*. at 562. The *Pye* court, in granting summary judgment to plaintiff on the application of the administrative exemption, found the defendant presented no evidence to demonstrate

if the plaintiff exercised any independent discretion or if his analysis and/or evaluation concerned only the use of skill in applying well-established techniques, procedures or specific standards established by defendant. *Id.* at 561-62.

In *Elliott v. Dril-Quip, Inc.*, the plaintiff worked as a manufacturing engineer for a company that manufactured parts for use in oil fields. 2015 WL 7302764 (S.D. Tex. Nov. 18, 2015). His responsibility was to develop "routers" for the production of parts—processed and schedules for the manufacture of the parts. *Id.* at *6. The employer argued that the plaintiff exercised independent discretion and judgment in order to determine "what Dril-Quip resources should be used to manufacture Dril-Quip parts." *Id*. at *10. The employer further argued that "developing routers required Manufacturing Engineers to use 'complex geometries, including trigonometry' to interpret what was required on the schematic drawings and spec sheets and to translate it into the router." *Id*. Therefore, the employer argued, the plaintiff had to have specialized knowledge of "Dril-Quip's manufacturing machinery, labor, time, costs, different types of metals, heat treating, rough-outs, quality system/inspections and special tooling." *Id*.

The plaintiff, on the other hand, argued that the employer grossly mischaracterized his responsibilities. The plaintiff claimed that his work was largely "repetitive and clerical in nature." More specifically, the plaintiff stated he had no input on part designs or any meaningful interaction with the Mechanical Engineers,

who were the "true design engineers" of the parts. He claimed that the "routers" were put together from those of similar parts manufactured in the past, that labor estimates were taken from historical production runs, and that the machine run times were calculated by the machines and compared to similar production runs. *Id.* at *11. In denying summary judgment to the employer, the *Elliott* court determined that the duties as outlined by the plaintiff would not support the "exercise of 'discretion and independent judgment' beyond the use of skill in applying well-established techniques, procedures or specific standards described in manuals or other sources." *Id.* (*citing* 29 C.F.R. § 541.202(e)).

## D.  Plaintiffs Were Not Exempt Under the Highly Compensated Exemption for Either the Executive or Administrative Exemption.

29 C.F.R. § 541.601(a) provides that "[a]n employee with total annual compensation of at least $100,000 is deemed exempt ... if the employee customarily and regularly performs any one or more of the exempt duties or responsibilities of an executive, administrative or professional employee...." To qualify for this exemption, the employee's primary duties must include performing office or non-manual work.[5] The employee need not meet all of the requirements of executive, administrative, or professional employees, however.[6]

---

[5] § 541.601(d).
[6] *See* § 541.601(c).

While the analysis of a highly compensated executive, administrative, or professional employee's primary duties may be reduced or streamlined, the employer still must establish that the employee "**customarily and regularly** performs any one or more of the exempt duties or responsibilities of an executive, administrative or professional employee…."[7] As explained by the DOL regulations at 29 C.F.R. § 541.701:

"The phrase 'customarily and regularly' means a frequency that must be greater than occasional but which, of course, may be less than constant. Tasks or work performed 'customarily and regularly' includes work normally and recurrently performed every workweek; it does not include isolated or one-time tasks."

In evaluating exemption defenses, courts "focus on evidence regarding the actual day-to-day activities of the employee rather than more general job descriptions contained in resumes, position descriptions, and performance evaluations."[8]

Judge Yeakel made a factual finding that STC did not prove that the allegedly exempt administrative duties asserted by STC were performed by Appellees on a weekly basis except confirming the accuracy of data, which has already been shown to be a production duty.  Because STC failed to show the alleged exempt duties were

---

[7] § 541.601(c).
[8] *Schaefer v. Ind. Mich. Power Co.*, 358 F.3d 394, 400 (6th Cir. 2004).

performed each week, the district court held STC could not meet its burden on exemption.

**E. It is Not Reversible Error For the District Court to Find The Administrative Job Duties at Issue Under The HCE Exemption Do Not Require The Exercise of Discretion and Independent Judgment.**

Appellants argue that the District Court erred when it analyzed the job duties under HCE exemption as applied to administrative employees because the District Court examined whether the work required the exercise of discretion and independent judgment. Appellant reiterates this throughout the brief in an attempt to undermine the Judge Yeakel's decision on other points. The Court should find no error in Judge Yeakel's ruling.

The District Court noted in its opinion Schlumberger identified five areas of work which would meet the duties test of the HCE. In its Post-Trial Brief, Section II discusses the HCE Exemption. Under that section of the post-trial brief, among the list of allegedly exempt work which Appellants argued met the requirements of the HCE exemption, Appellants include a subheading which reads, "Plaintiffs Customarily and Regularly Exercised Independent Judgment and Discretion." It was Appellants who injected the discretion and independent judgment test into the HCE exemption, which forced the District Court to evaluate it.

Appellants post trial brief was filed on October 9, 2018. The decision Appellants rely on to contend that discretion and independent judgment is not a

requirement of the HCE exemption was issued on April 17, 2020. See *Smith v. Ochsner Health Sys.*, 956 F.3d 681 (5th Cir. 2020). Thus the inclusion of this test under the HCE exemption appears to be an issue of addressing STC's argument made prior to *Smith*. However, the question of whether Gilchrist and Brockman exercised discretion and independent judgment when the HCE exemption is in play was not rendered irrelevant by *Smith*. This Court, in *Smith*, held that there are "two types" of exempt duties. *Id.* at 685. While the exercise of discretion and independent judgment is not a requirement of the HCE exemption when paired with the administrative exemption, *Smith* did not preclude that the HCE/Administrative exemption could not be met by someone whose primary duty includes the exercise of discretion and independent judgment. If the two tests are now disjunctive, either one arguably could suffice. It was therefore important for the District Court to include it in the opinion. Alternatively, if the discretion and independent judgment test should not be considered under the HCE exemption, there is still no reversible error. It does no harm to Appellants for Judge Yeakel to find Schlumberger failed to meet a test that should not have been applied. It is a classic example of harmless error. The Court, therefore, should reject Appellant's arguments on this issue.

## CONCLUSION AND RELIEF SOUGHT

Appellees ask the Court to affirm the decision of the district Court in all respects.

Respectfully Submitted,

*/s/ J. Derek Braziel*
**J. DEREK BRAZIEL**

Dated: January 17, 2023

Respectfully Submitted,

**s/ J. Derek Braziel**
**J. DEREK BRAZIEL**
Texas Bar No. 00793380
Braziel | Dixon, LLP
1910 Pacific Ave.
Suite 12000 – Box 220
Dallas, Texas 75201
(214) 749-1400 – Telephone
(214) 749-1010 – Facsimile
www.overtimelawyer.com
**Attorney for Plaintiffs-Appellants**

**CERTIFICATE OF COMPLIANCE**

Pursuant to Rule 32(g)(1) of the Federal Rules of Appellate Procedure, I certify that this motion for an extension of time contains 8045 words and thereforecomplies with the type-volume limitation set forth in Rule 27(d)(2)(A).

**s/ J. Derek Braziel**
**J. DEREK BRAZIEL**

**CERTIFICATE OF HARD COPY SUBMISSION**

The undersigned hereby certifies that the required number of copies of this Brief and Appendix will be submitted to the Court, after the electronically filed brief has been accepted by the court.

**/s/ J. Derek Braziel**
**J. Derek Braziel**

**CERTIFICATE OF DIGITAL SUBMISSION**

The undersigned hereby certifies that all required privacy redactions have been made, the ECF submission is an exact copy of the hard copy versions submitted to the Court, and the digital submissions have been scanned for viruses in accordance with the Rules.

**/s/ J. Derek Braziel**
**J. Derek Braziel**

## CERTIFICATE OF SERVICE

I certify that on January 17, 2023, this motion for an extension was served on all parties or their counsel through the CM/ECF system.

**s/ J. Derek Braziel**
**J. DEREK BRAZIEL**