No. 22-50257

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

JOHN GILCHRIST; BYRON BROCKMAN,
*Plaintiffs-Appellees*

v.

SCHLUMBERGER TECHNOLOGY CORPORATION,
*Defendant-Appellant*

On appeal from the United States District Court for the Western District of Texas
The Honorable Lee Yeakel

Case No. 1:16-cv-00008-LY

On Appeal

REPLY BRIEF OF APPELLANT
SCHLUMBERGER TECHNOLOGY CORPORATION

Robert P. Lombardi
Kelly D. Reese
**THE KULLMAN FIRM, P.L.C.**
1100 Poydras Street, Suite 1600
New Orleans, LA 70163
Tel: (504) 524-4162
Fax: (504) 596-4189
rpl@kullmanlaw.com
kr@kullmanlaw.com

**Attorneys for Appellant**

**Oral Argument Requested**

# TABLE OF CONTENTS

## Contents

TABLE OF CONTENTS ......................................................... ii

TABLE OF AUTHORITIES ..................................................... iv

INTRODUCTION ................................................................1

ARGUMENT ....................................................................4

   A. Plaintiffs' First Issue Presented for Review Concedes the District Court Committed Error .........................................................4

   B. Plaintiffs' Second Issue Presented for Review Incorrectly Frames the Issue of Work Directly Related to the General Business Operations of STC or Its Customers. .................................................................5

   C. Plaintiffs' Statement of the Case Places the Blame for the District Court's Delay in Ruling on the Wrong Party. ...................................6

   D. Plaintiffs Misconstrue *Dalheim* and Its Import in Light of *Encino*. ............8

   E. STC Has Not "Mispresented" the FLSA's Purposes. ................................10

   F. Plaintiffs' Argument Regarding the Standalone Administrative Exemption Attacks a Strawman. .................................................11

   G. Plaintiffs' Reliance on *Dewan* Is Both Misplaced and Misleading. ...........12

   H. *Pye* and *Elliot* Are Inapposite and Predate *Encino*. ...................14

   I. Quality Control Is an Administrative Function Even When Related to Production. ...............................................................15

J.  Plaintiffs Rely Exclusively on Caselaw Analyzing the Administrative Exemption Rather than the HCE Exemption and Cases Which Predate *Encino*. .................................................................................................18

K.  The DOL Has Not Determined that MWDs Are Non-Exempt Under the Administrative and/or HCE Emptions. .......................................................20

L.  *Smith* Is Controlling Precedent Regardless of the Date of Its Issuance by This Court and the Trial Court's Failure to Follow *Smith* Is Not Harmless Error. .................................................................................................20

CONCLUSION .........................................................................................................23

CERTIFICATE OF SERVICE ................................................................................25

CERTIFICATE OF COMPLIANCE.........................................................................26

# TABLE OF AUTHORITIES

## CASES

*Allen v. Coil Tubing Servs., LLC,*
   846 F. Supp. 2d 678 (S.D. Tex. 2012) ................................................................11

*Ayestas v. Davis*,
   138 S. Ct. 1080, (2018) ...................................................................................22

*Bollschweiler v. El Paso Elec. Co.*,
   166 F. Supp. 3d 808 (W.D. Tex. 2016)..............................................................11

*Boudreaux v. Schlumberger Tech. Corp.*,
   No. 6:14-cv-02267 (W.D. La. July 8, 2014) ........................................................8

*Carley v. Crest Pumping Techs., L.L.C.*,
   890 F.3d 575 (5th Cir. 2018)........................................................................9, 15

*Carranza v. Red River Oilfield Servs., LLC*,
   2017 WL 387196 (S.D. Tex. Jan. 27, 2017) ......................................................11

*Cheatham v. Allstate Ins. Co.*,
   465 F.3d 578 (5th Cir. 2006) ............................................................................9

*Dalheim v. KDFW-TV*,
   918 F.2d 1220 (5th Cir. 1990).......................................................................8, 9

*Dewan v. M-I LLC*,
   858 F.3d 331 (5th Cir. 2017)........................................................................4, 12

*Dewan v. M-I LLC*,
   No. H-15-1746, Doc. Nos. 199 (Oct. 25, 2018)................................................13

*Elliot v. Dril-Quip, Inc.,*
   2015 WL 7302764 (S.D. Tex. Nov. 18, 2015)....................................................14

*Encino Motorcars, LLC v. Navarro*,
   138 S.Ct. 1134 (2018) ........................................... 2, 4, 6, 9, 14, 19, 20

*Hewitt v. Helix Energy Sols. Grp., Inc.*,
  15 F.4th 289, (5th Cir. 2021), *cert. granted* 212 142 S.Ct, 2674 (2022) ...............18

*Hickman v. U.S.*,
  10 Cl. Ct. 550 (1986) ................................................................................6

*Kamen v. Kemper Fin. Servs., Inc.*,
  500 U.S. 90, 111 S.Ct. 1711, 114 L.Ed.2d 152 (1991) ........................................21

*Levi Strauss & Co. v. Abercrombie & Fitch Trading Co.*,
  633 F.3d 1158 (9th Cir. 2011) ..................................................................22

*Malat v. Riddell*,
  383 U.S. 569 (1966) ..............................................................................21

*Maracich v. Spears*,
  570 U.S. 48 (2013) ...............................................................................22

*Mascagni v. Schlumberger Tech. Corp.*,
  2017 WL 3648315 (W.D. La. Aug. 22, 2017) ............................................. 18, 19

*Owens v. Neovia Logistics, L.L.C.*,
  816 Fed. App'x 906 (5th Cir. 2020) ............................................................10

*Parrish v. Premier Directional Drilling, L.P.*,
  917 F.3d 369 (5th Cir. 2019) ............................................................. 17, 18

*Patterson v. Alabama*,
  294 U.S. 600, 55 S.Ct. 575, 79 L.Ed. 1082 (1935) ..........................................21

*Pruneda v. Xtreme Drilling & Coil Servs.*, Inc.,
  2017 WL 3023214 (W.D. Tex. June 20, 2017) ...............................................11

*Pye v. Oil States Energy Serv., LLC*,
  233 F.Supp.3d 541 (W.D. Tex. 2017) ........................................................14

*Schlumberger Tech. Corp.*,
  818 Fed. App'x 304 (5th Cir. 2020) ............................................................8

*Smith v. Oschner Health Sys.*,
  956 F.3d 681 (5th Cir. 2020) ............................... 2, 5, 6, 11, 12, 18, 19, 20, 23

v

*Venable v. Schlumberger Ltd.*,
   2022 WL 895447 (W.D. La. Mar. 25, 2022) ......................................................17

*Zannikos v. Oil Inspections (U.S.A.), Inc.*,
   605 Fed. App'x 349 (5th Cir. 2015)...................... 2, 5, 6, 9, 11, 16, 18, 19, 20, 24

## STATUTES

29 C.F.R. § 541.201(b) ................................................................................... 15, 19

29 C.F.R. § 541.201(c)......................................................................................5, 9

29 C.F.R. § 541.601(c)................................................................................... 11, 15

# <u>INTRODUCTION</u>

STC's appellate brief focused on how the evidence and law established that Plaintiffs clearly met the regulatory test for the Highly Compensated Employee exemption ("HCE").[1]  Both John Gilchrist and Byron Brockman were paid on a salary basis that exceeded $455 per week and the total compensation for each exceeded $100,000 per year.  Plaintiffs' primary duty was not manual work, and both Plaintiffs customarily and regularly performed at least one exempt task or responsibility.

STC used Plaintiffs own admissions to show that they played a critical role by almost continuously reviewing and determining the accuracy of data, including both surveys and logs, that showed the real time location of the Bottom Hole Assembly ("BHA") and the composition of the geologic formation though which the BHA was drilling.  This was a key quality control function for the customer that told it if they were on plan or had strayed from the projected well bore path.  Similarly,

---

[1] STC elicited much broader testimony at trial, showing how the Measurement While Drilling personnel (MWDs) customarily and routinely performed other administrative tasks or responsibilities as well such as regulatory functions by certifying the accuracy of their surveys for filing with state agencies as well as safety functions regarding the handling of lithium batteries and radioactive sources.  STC also detailed how both Plaintiffs customarily and regularly performed executive duties such as training and assigning tasks to junior MWDs and supervising the rig crew when they were handling MWD tools.  STC further showed how Plaintiffs even satisfied the requirements of the base administrative exemption as their primary duties were directly related to the general business operations of the customer and they exercised judgement as discretion as to matter of significance.  But STC does not need to show all that on appeal.  On appeal, STC merely needs to show Plaintiffs meet as least one exemption.  So, STC has focused on the HCE and the clear evidence supporting the HCE.

the logs told the customers if the geologists' predictions were correct or if the entire well plan needed to be modified due to unexpected formations below ground. Plaintiffs even admitted that their work was essential to the accurate drilling of modern wells.

STC also shows in detail how the trial court had erred. The trial court ignored all of Plaintiffs' admissions to performing exempt duties. The trial court did not follow binding Fifth Circuit precedent in *Smith v. Oschner Health Sys.*, 956 F.3d 681 (5th Cir. 2020), or the Supreme Court's ruling in *Encino Motorcars, LLC v. Navarro*, 138 S.Ct. 1134 (2018), in evaluating the evidence of exempt duties. And contrary to *Zannikos,* even though Plaintiffs were not production line workers (they were not drilling the well), the trial court found that their type of oversight of the operation with their confirmed data was not the type of quality control work contemplated by the regulations. *Zannikos v. Oil Inspections (U.S.A.), Inc.*, 605 Fed. App'x 349 (5th Cir. 2015). Finally, the trial court further erred by analyzing whether STC established both the primary duties of directly supporting the general operations of the customer *and* exercising judgment and discretion as to matters of significance when the HCE does not require an employer to establish any primary duty but only requires that the employee *customarily and regularly* perform <u>any</u> one exempt duty or responsibility.

Plaintiffs' Brief (expressly in some places and by implication in others) recognizes the trial court erred by requiring both the "the independent judgment and discretion requirement and the "general business operations" of the customer requirement of the standalone administrative exemption in its analysis of the HCE exemption duties prong. Faced with this inconvenient reality, Plaintiffs' strategy is three-fold.

First, Plaintiffs play the blame game. Plaintiffs wrongly place the blame for the three year-period from the bench trial to final judgment upon STC and COVID and then blame STC for the fact that *Smith*, the controlling case, was not decided at the time trial concluded, (but it was decided well before judgment in this case was entered). STC was not responsible for either the delay or COVID.

Second, Plaintiffs attack straw men. Plaintiffs argue against positions never asserted on appeal by STC. STC asserts that Plaintiffs were exempt from overtime under the administrative exemption prong of the HCE. Yet, Plaintiffs devote approximately 80 percent of their argument to the standalone administrative exemption. This appeal is about whether the district court properly determined under the applicable law and the facts presented at trial that Plaintiffs were not exempt under the HCE.

Third, Plaintiffs play fast and loose with the legal authorities cited in their brief and cite propositions for which there are no authority. In that same light,

3

Plaintiffs rely almost exclusively on cases decided before the Supreme Court's watershed decision in *Encino*, which held the FLSA's exemptions must now be given a "fair reading" rather than construed narrowly against the employer.

Plaintiffs' heavy reliance on this Court's decision in *Dewan v. M-I LLC*, 858 F.3d 331 (5th Cir. 2017), illustrates just how far off track their argument goes. *Dewan* involved the administrative exemption, not the HCE exemption, and therefore is distinguishable on this basis. Additionally, *Dewan* involved application of a different standard, as it was decided before *Encino*. And finally, following remand in *Dewan,* STC prevailed at trial when the jury found that the plaintiffs were **exempt** under the administrative exemption – a point conveniently omitted by Plaintiffs. Further, Plaintiffs have outlandishly asserted without citation to authority that the Department of Labor ("DOL") has determined that MWDs are not exempt – an outright falsehood.

## **ARGUMENT**

### A. **Plaintiffs' First Issue Presented for Review Concedes the District Court Committed Error.**

STC's first issue on appeal is: "Whether the district court erred by imposing and utilizing the 'independent judgment and discretion' requirement of the standalone administrative exemption in its analysis and application of the HCE exemption duties prong." Plaintiffs reframe the issue as follows: "Whether it is reversible error for the District Court to have determined the duties performed by

4

Plaintiffs did not include 'the exercise of discretion and independent judgment with respect to matters of significance [in] its analysis of the Highly Compensated Employee exemption.'"[2]  This rephrasing to change and mask STC's issue is an implicit concession that the district court relied upon the independent judgment and discretion requirement in determining whether the HCE applied to Plaintiffs, as opposed to properly analyzing whether they regularly performed at least one of the duties or responsibilities included within the administrative exemption.  Avoiding STC's issue, Plaintiffs assert there was no reversible error.  As discussed in STC's original briefing and below, Plaintiffs are clearly wrong.

### B.  Plaintiffs' Second Issue Presented for Review Incorrectly Frames the Issue of Work Directly Related to the General Business Operations of STC or Its Customers.

STC's second issue on appeal is: "Whether the district court erred by determining that the HCE exemption did not apply to Plaintiffs based upon its finding that they did not perform any work directly related to the general business operations of STC or its customers."  Plaintiffs' Statement of Issues again misconstrues the issue.  Contrary to *Zannikos* and *Smith*, Plaintiffs first argue they are production workers because their services are a product that STC sells to its customers.  This argument, if accepted, invalidates 29 C.F.R. § 541.201(c), which provides that advisors and consultants to an employer's customer may qualify as

---

[2] Plaintiffs' Response Brief (Plaintiffs' Brief"), Doc. No. 43 at 9.

exempt administrative employees.  Second, they argue that their data review, certification, and support cannot be exempt as it does not involve creating policies applicable to the general business operations of the customer.  This is a pre-*Encino* standard that is contrary to *Zannikos* and *Smith*.[3]

STC's position is that the district court erred by applying the general business relationship test in the context of the standalone administrative exemption rather than the HCE exemption.  This distortion is at the heart of Plaintiffs' Response Brief which devotes roughly 80 percent of its argument to whether the administrative exemption applies to Plaintiffs and less than 20 percent to whether the requirements of the HCE exemption – the exemption at issue in this case – have been met.

C.  **Plaintiffs' Statement of the Case Places the Blame for the District Court's Delay in Ruling on the Wrong Party.**

The trial of this matter began on August 13, 2018 and concluded on August 15, 2018.  Over three years later, the district court entered its Initial Findings of Fact

---

[3] In *Hickman v. U.S.*, 10 Cl. Ct. 550 (1986), the plaintiffs were technicians in charge of a sophisticated recording system deployed aboard a ship whose mission was to record acoustical signatures of submarines.  The trial court (affirmed on appeal) had "no difficulty in saying that the provision of accurate and valid data is a service [as opposed to production]. Data processing itself has always been determined in any context to be a service and not a production of any item such as the hardware itself. The administrative employees in this category provide support to line managers by providing expert advice on specialized subject matter fields, such as that provided by management consultants or systems analysts[.]" *Id.* at 558. Like Plaintiffs here, the *Hickman* plaintiffs had "the responsibility for the accuracy and validity of all data recorded and processed . . . [and were providing] a supporting service in terms of the overall mission of MONOB to provide acoustic signatures of submarines at different speeds," and the court held they were exempt administrative employees. *Id.* at 559.

and Conclusions of Law on December 15, 2021 ("Initial Findings and Conclusions") and issued a Final Judgment ("Final Judgment") based upon its Initial Findings of Fact and Conclusions (collectively "Orders").  ROA.2730-2748; ROA.2774-2776. STC has referenced this delay in its briefing because the district court relied heavily upon credibility determinations in its Initial Findings and Conclusions – determinations made three years after trial and likely on the basis of a cold transcript. However, STC casts no stones at the district court or anywhere else with regard to the reasons for the delay in its original brief.

Unfortunately, Plaintiffs cannot say the same.  They blame COVID and STC.[4] Consequently, STC must respond, and the truth is that much of the blame for delay lies with Plaintiffs.

Plaintiffs filed an eleventh-hour motion, on November 9, 2018, *after* the trial had concluded, to reopen discovery in this case, alleging STC failed to disclose or include information on a privilege log.  ROA 2029-2283.  This was a delay tactic. STC had disclosed that the subject privileged review had occurred early in the litigation.  Plaintiffs never bothered to challenge the claim of privilege until they became aware that the privileged review was being litigated in another case against

---

[4] Plaintiffs' Brief, Doc. No. 43 at 9.

STC, *Boudreaux v. Schlumberger Tech. Corp.*, No. 6:14-cv-02267 (W.D. La. July 8, 2014), beginning in September 2018.[5]

In *Boudreaux*, STC successfully litigated the subject privileged review and received a favorable ruling from the Fifth Circuit that the review was indeed privileged and protected from disclosure. *See In re Schlumberger Tech. Corp.*, 818 Fed. App'x 304 (5th Cir. 2020) (opinion issued June 4, 2020, approximately a year and a half before the district court entered judgment in this case). Contrary to Plaintiffs' open-ended allegation implying STC has engaged in discovery misconduct, STC's position was fully vindicated by the Fifth Circuit, and the trial court here accepted that decision.

Regardless, none of this alters the fact that the district court did not decide this case until three years after trial and then largely on the basis of credibility determinations. To point out this **fact** does not, as stated by Plaintiffs, "dishonor[ ] the district court."[6]

### D.   Plaintiffs Misconstrue *Dalheim* and Its Import in Light of *Encino*.

Plaintiffs make much of the reference to "historical facts" in *Dalheim v. KDFW-TV*, 918 F.2d 1220, 1226 (5th Cir. 1990), and imply that findings of

---

[5] *See Boudreaux v. Schlumberger Tech. Corp.*, No. 6:14-cv-02267 (W.D. La. July 8, 2014), Doc. Nos. 274 and following; email from Plaintiffs' counsel to STC' counsel dated November 1, 2018, referencing privileged review in *Boudreaux* and Michael Josephson, the plaintiffs' counsel in *Boudreaux*. *Boudreaux*, Doc No. 192-1; *Boudreaux*, Doc. No. 184-1 at 11–12).

[6] Plaintiffs' Brief at 43.

"historical facts" related to exempt status are beyond the purview of appellate review. They are not.

"Historical facts" are nothing more than facts as opposed to inferences from facts. *See Cheatham v. Allstate Ins. Co*., 465 F.3d 578, 584–85 (5th Cir. 2006) (historical facts are facts which form the basis of a factual inference which in turn support a legal conclusion). Because the FLSA's exemptions must be given a "fair reading" rather than being construed narrowly against the employer, *Encino*, 138 S.Ct. at 1142[7], "historical" factual findings regarding exemptions are on the same level as any other factual findings – no special presumptions in favor of correctness are in play regarding those findings or inferences drawn therefrom. Despite Plaintiffs' suggestion to the contrary, *Dalheim* clearly states that exempt status is ultimately a legal conclusion based on factual inferences drawn from "historical facts." 918 F.2d at 1226.

"The amount of time the employee devotes to particular duties and the significance of those particular duties are questions of fact." *Zannikos*, 605 Fed. App'x at 352 (citing *Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 714, 106 S.Ct. 1527, 89 L.Ed.2d 739 (1986)). STC has correctly stated the standard of review without contradiction for each issue on appeal.

---

[7] *See also Carley v. Crest Pumping Techs., L.L.C.*, 890 F.3d 575, 579 (5th Cir. 2018) (same).

On the other hand, Plaintiffs are the parties who are either confused about the standard or who are intent on sowing confusion regarding the same. The ultimate decision of whether an employee is exempt from the FLSA's overtime compensation provisions is a question of law that is reviewed *de novo*. *Owens v. Neovia Logistics, L.L.C.*, 816 Fed. App'x 906, 908 (5th Cir. 2020).

### E.  STC Has Not "Mispresented" the FLSA's Purposes.

STC has neither argued that the FLSA's overtime provisions do not apply to employees simply because they meet the annual salary threshold standards for the HCE, nor has it otherwise misrepresented the purpose of the FLSA. Further, STC has not suggested that Plaintiffs motivation for this lawsuit is "greed." "Optics" are not the issue here.[8]

What STC has done is to set forth a legal presumption expressly adopted by the DOL. Whether the HCE exemption applies is the issue. To answer that question, STC set forth the purpose of the HCE exemption as part of the overall framework of the FLSA. The DOL has spoken:

> A **high level of compensation is a strong indicator of an employee's exempt status**, thus *eliminating the need for a detailed analysis of the employee's job duties*. Thus, a highly compensated employee will qualify for exemption if the employee customarily and regularly performs any one or more of the exempt duties or responsibilities of an executive, administrative or professional employee . . . .

---

[8] Plaintiffs' Brief at 17.

29 C.F.R. § 541.601(c) (emphasis added); *Zannikos*, 605 F. App'x at 359 (quoting same).[9] This means that a six-figure salary signals that a court need not parse out the job duties as the position is probably exempt.  The background of and purpose underlying the FLSA must be considered in reviewing the undisputed facts so as to avoid an illogical or absurd result, particularly in light of the substantial compensation paid to Plaintiffs, which satisfies the threshold requirement for the HCE.

## F.    Plaintiffs' Argument Regarding the Standalone Administrative Exemption Attacks a Strawman.

STC has not argued on appeal that Plaintiffs are exempt under the standalone administrative exemption.[10] On the contrary, STC has appealed the district court's legally incorrect imposition of all the requirements of the standalone administrative exemptions upon the HCE exemption.  The vast majority of Plaintiffs' argument is nothing short of a red herring and an attack of a strawman.

---

[9] Indeed, the DOL's "confidence" that employees making over $100,000 are paid so handsomely because they are actually doing exempt job duties has been borne out in the case law. Since the advent of the highly compensated exemption in 2004, courts routinely make a finding regarding the exempt status of employees making over $100,000 annually. *See, e.g.*, *Zannikos*, 605 F. App'x 349; *Allen v. Coil Tubing Servs., LLC*, 846 F. Supp. 2d 678 (S.D. Tex. 2012); *Bollschweiler v. El Paso Elec. Co.*, 166 F. Supp. 3d 808 (W.D. Tex. 2016); *Pruneda v. Xtreme Drilling & Coil Servs.*, Inc., 2017 WL 3023214 (W.D. Tex. June 20, 2017); *Carranza v. Red River Oilfield Servs., LLC*, 2017 WL 387196 (S.D. Tex. Jan. 27, 2017).

[10] While STC did argue at trial that Plaintiffs were also exempt under the standalone administrative exemption and the executive prong of the HCE exemption.  STC's appeal is based upon the erroneous application of the standalone administrative exemption to the HCE rather than the standard set forth in *Smith*—and the FLSA—for analyzing the applicability of the HCE.

The Fifth Circuit has made clear that the requirements of the standalone executive and administrative exemptions are "disjunctive when paired with a high salary" under the HCE. *See Smith*, 956 F.3d at 685. To establish applicability of the HCE exemption, STC only had to show that Plaintiffs regularly and customarily performed **only one** of these duties and responsibilities. *See id.*

STC appealed partly because the district court committed reversible error by reading the HCE exemption through the lens of the more onerous requirements of the standalone administrative exemption. Plaintiffs apparently are attempting to lead this Court down the same path.

### G.   Plaintiffs' Reliance on *Dewan* Is Both Misplaced and Misleading.

In *Dewan*, the Fifth Circuit reversed summary judgment in favor of the defendant and remanded the case to the district court because it determined there to be genuine disputes of material fact that affected whether the administrative exemption applied. 858 F.3d 331, 332 (5th Cir. 2017). Plaintiffs' detailed discussion of *Dewan* over the course of five pages accords the case the reverence of controlling precedent, if not gospel. It is neither. This pre-*Encino* decision evaluates a different position, under a different exemption, using a different and overruled standard, without reaching the merits of the underlying claim. It is also worth noting that *Dewan* dealt with mud engineers, not MWDs like Plaintiffs here. Moreover, as

12

noted above, the procedural posture of that case was a reversal of summary judgment due to disputed fact issues. As a result, *Dewan* is singularly unhelpful here.

In reaching its decision on the applicability of the administrative exemption, the *Dewan* court, after analyzing the evidence as to each requirement of the administrative exemption, stated: "However close the determination may be, M-I has not established its affirmative defenses peradventure." *Id*. at 430. The *Dewan* court <u>*never determined*</u> whether the plaintiffs actually engaged in quality control or whether their work was directly related to the general business operations of M-I or its customers. The decision was deemed too close to call on summary judgment.

On remand, *Dewan* was tried to a jury. The jury returned a verdict in favor of the *defendant* expressly finding that each plaintiff was "exempt from the FLSA's overtime requirement as an administrative employee[,]" and the district court entered judgment in favor of the defendant.[11] In other words, *Dewan* was ultimately resolved by a jury in favor of the defendant upon its determination that the *administrative exemption* applied to the plaintiffs. A fact conveniently omitted by Plaintiffs.

To reach this determination, the *Dewan* jury necessarily found, per that court's jury instructions, that: "(1) Plaintiffs' primary duty was the performance of office or non-manual work directly and closely related to the management or general

---

[11] *See Dewan v. M-I LLC*, No. H-15-1746, Doc. Nos. 199, 202.

business operation of the Defendant or the Defendant's customers or client; and (2) Plaintiffs' primary duty included the exercise of independent judgment and discretion with respect to matters of significance."[12]  If *Dewan* is analogous and controlling, as Plaintiffs seem to believe, the jury verdict in the defendant's favor unequivocally supports STC's position that quality control functions performed at the well site are related to the general business operations of STC.[13]

### H.  *Pye* and *Elliot* Are Inapposite and Predate *Encino*.

*Pye v. Oil States Energy Serv., LLC*, 233 F.Supp.3d 541, (W.D. Tex. 2017) and *Elliot v. Dril-Quip, Inc.,* 2015 WL 7302764 (S.D. Tex. Nov. 18, 2015), are cited by Plaintiffs apparently for the proposition that they did not exercise independent judgment and discretion as to matters of significance.  While Plaintiffs are wholly mistaken, this is also irrelevant as STC does not have to make this showing to establish the HCE applies.  This is one the bases for this appeal.

To put in plainly: *Pye* and *Elliot* do not address the matters at issue in this case.  Notably, *the HCE was not at issue in either case*, each is prior to *Encino*, and each case expressly states that exemptions under the FLSA are "narrowly construed" against the employer.  *Pye*, 233 F.Supp.3d at 551; *Elliot*, 2015 WL 7302764 at *5.

---

[12] *See id.*, Doc. No. 194 at 7–8.

[13] It also should be noted that the Fifth Circuit's decision in *Dewan* predates the Supreme Court's decision in *Encino* and thus, was decided under the former standard that exemptions were to be narrowly construed in favor of the employee and against the employer.

This renders those cases of dubious precedential value in light of the Supreme Court's subsequent decision in *Encino* holding that FLSA exemptions must be given a "fair reading" rather than construed narrowly against the employer.  138 S.Ct. at 1142; *see also Carley*, 890 F.3d at 579 (same).

## I.     Quality Control Is an Administrative Function Even When Related to Production.

Plaintiffs describe their MWD duties as: "monitoring logging data as it is being produced during drilling to ensure it is within the range of values set by the well plan and, when it is not, providing the information to the MWD's coordinator, well planner, directional driller, company man, and so on."[14]  They then argue (and the district court agreed) that this is not "quality control" as described in the regulations, 29 C.F.R. § 541.201(b).  Both the trial court and Plaintiffs are mistaken.

This conclusion/position wrongly construes the place of "quality control" in the applicable regulations.  Quality control is an administrative function even though it is generally related to production.  The distinction is that administratively exempt quality control involves the evaluation of the product, not creating or producing a product.  For example, steel mill quality control workers take samples of raw steel in process in the mill to determine whether it contains impurities and has the correct

---

[14] Appellee's Brief at 26.

balance of elements (e.g., nickel) to ensure that it meets certain standards. Quality control differs from industry to industry.

In *Zannikos*, for example, this Court rejected the plaintiffs' argument that their duties were related to production rather than administrative work directly related to the general business operation of customers. 605 Fed. App'x at 353. In rejecting this argument, the Court observed that plaintiffs did not "transfer oil, blend oil, or manufacture or sell petroleum products" but rather provided customers with "inspection and operational support services" and held that "[s]uch services are not considered production." *Id*.

Here the product is the well. The drilling rig and the rig crew produce the well. MWD's measure the progress and accuracy of that production and verify the accuracy of the data used to compare the actual work to the planned work. They also produce the logs that test the accuracy of the overall well plan, the model for drilling the well on the predetermined path that leads to the oil and gas deposits.

Further, there are at least two distinct aspects of "quality control." Sometimes "quality control" refers to "focusing on quality requirement, such as ensuring a part meets specifications."[15] In other contexts, "quality control" refers to the larger process of "quality assurance" and includes "the sum of all action and processes

---

[15]  *Investopedia*, Quality Control:  What It Is, How It works, and QC Careers, https://www.investopedia.com/terms/q/quality-control.asp#toc-quality-control-vs-quality-assurance (last visited February 12, 2023).

needed to demonstrate that quality requirements are fulfilled."[16]  Here, as described

below, Plaintiffs were part of a team engaged in quality control and the larger quality

assurance process.

MWDs performed quality control functions in two different ways.  First, the

MWD provides quality control for the rig by analyzing precisely where the BHA is

located downhole and whether it has deviated from the projected well path.  This

information is provided to the directional driller and the customer so that they may

take corrective action as needed to remain within the well plan.  That is clearly

quality control.  Second, MWDs quality control the survey and log data created by

the downhole sensors to ensure the information passed to the directional driller and

the client is accurate.   This is similar to the type of quality control work conducted

by STC employees in *Venable v. Schlumberger Ltd.*, 2022 WL 895447 (W.D. La.

Mar. 25, 2022), where the court found they were exempt under the HCE exemption.

There is no requirement under the law that quality control be performed

exclusively by one person as opposed to a group of people working in a collaborative

process. As this Court observed in *Parrish v. Premier Directional Drilling, L.P.*, 917

F.3d 369 (5th Cir. 2019), directional drilling is a complex "process" which involves

the expertise of both directional drillers ("DDs") and MWDs, and MWDs provide

directional drillers with measurement information from downhole tools "crucial to

---

[16] *Id.*

17

the DDs' ability to perform their job" – "advising . . . [the customer] how to perform a directional drill, with it undertakes." *Id*. at 376.[17]

**J.    Plaintiffs Rely Exclusively on Caselaw Analyzing the Administrative Exemption Rather than the HCE Exemption and Cases Which Predate *Encino*.**

Plaintiffs' Brief cites 20 reported cases.  Of those 20 cases, only four involved the HCE exemption:  *Hewitt v. Helix Energy Sols. Grp., Inc.*, 15 F.4th 289, 302 (5th Cir. 2021), *cert. granted* 212 142 S.Ct, 2674 (2022); *Smith*, 956 F.3d 681; *Mascagni v. Schlumberger Tech. Corp*., 2017 WL 3648315 (W.D. La. Aug. 22, 2017); and *Zannikos,* 605 Fed. Appx. 349.

Plaintiffs cite *Hewitt* solely for the proposition that high compensation alone does not qualify an employee as exempt from overtime under the FLSA – a point which is not in contention.[18]  The only issue in *Hewitt* is whether the compensation requirement of the HCE exemption was satisfied: an issue which Plaintiffs here concede.

---

[17] It is also notable that the Court disagreed with plaintiffs' attempt to use the well plan as evidence that plaintiffs were tightly controlled.  The Court stated, "Additionally, although plaintiffs were provided with an already designed well plan, they made the plan work." *Parrish*, 917 F.3d at 381–82.  The trial evidence undisputedly showed that Plaintiffs reviewed the data for accuracy and then passed it directly to the customer and DD in real time without review by STC.
[18] Plaintiffs' Brief at 42–43.

Plaintiffs cite *Smith*, a case heavily relied upon by STC, only to argue that it should not apply in this case because it was decided after the date on which Appellant filed its post-trial brief in the district court, a nonsensical argument addressed *infra*.[19]

Plaintiffs cite *Mascagni* for the proposition that a court has previously denied summary judgment on the HCE exemption with respect to the MWD position.[20] This argument holds no water. First, *Mascagni* was decided prior to *Encino* when the exempt status was construed narrowly in favor of the employee and against the employer. Second, *Mascagni* merely held that there was a factual issue concerning whether STC had established the applicability of the exemption under the pre-*Encino* standard.[21] Further, *Mascagni* specifically states the administrative exemption likely contains "an additional requirement" to the HCE exemption which is that "an employee's primary duty must include the exercise of discretion and independent judgment and discretion[,]" citing *Zannikos*. As set forth in both *Zannikos* and *Smith*, the only non-compensation requirement of the HCE exemption is that the employee customarily and regularly perform at least one exempt duty, and that duty need not be the employee's primary duty.

---

[19] *Id.*

[20] *Id.* at 31.

[21] In *Mascagni*, defendant did not offer (and therefore, the court did not consider) the role of MWD technology as related to maximizing <u>efficiency</u> of drilling operations, as distinguished from being part of the drilling operations itself. The court merely held that, given the evidence presented in that particular case, there was a fact question about how MWD technology interacted with the oil customers' drilling operations.

Plaintiffs cite *Zannikos* in connection with the independent judgment and discretion standard of the administrative exemption.[22]  The *Zannikos* court discussed this requirement in the context of analyzing the duties of one of the plaintiffs who did **not** qualify for the HCE exemption.   *See* 605 Fed. App'x at 354–55.

None of the 16 other cases cited by Appellee involves the applicability of the HCE exemption—the sole issue before this Court here —and all predate *Encino*. As discussed, *supra*, the other four cases either support STC or are inapposite.

### K.    The DOL Has Not Determined that MWDs Are Non-Exempt Under the Administrative and/or HCE Emptions.

Plaintiffs boldly state: "The Department of Labor has determined MWDs are not exempt under either the administrative or highly compensated exemptions."[23] This is a falsehood, and Plaintiffs do not cite (nor can they) any authority for this proposition.

### L.    *Smith* Is Controlling Precedent Regardless of the Date of Its Issuance by This Court and the Trial Court's Failure to Follow *Smith* Is Not Harmless Error.

Plaintiffs' concluding argument, while convoluted, appears to be that the district court's inclusion of the "discretion and independent judgment" requirement of the administrative exemption as a requirement of the HCE exemption cannot be

---

[22] Plaintiffs' Brief at 20.
[23] Plaintiffs' Brief at 31.

reversible error because this Court did not issue *Smith*, 956 F.3d 681 until April 17, 2020.[24]  This is nonsensical.

The district court entered its Initial Findings of Fact and Conclusions of Law on December 15, 2021 ("Initial Findings and Conclusions") and issued a Final Judgment ("Final Judgment") based upon its Initial Findings of Fact and Conclusions (collectively "Orders").  ROA.2730-2748; ROA.2774-2776.  This was over a year and a half **after** this Court decided *Smith*.

*Smith* was binding precedent when the district court entered judgment in this case and *Smith* clearly states that the exercise of discretion and independent judgment is <u>not</u> a requirement of the HCE exemption.  956 F.3d at 685.   Regardless, appellate courts are "bound to consider any change, either in fact or in law, which has supervened since the [district court's] judgment was entered."   *Patterson v. Alabama,* 294 U.S. 600, 607, 55 S.Ct. 575, 79 L.Ed. 1082 (1935); *see also Kamen v. Kemper Fin. Servs., Inc.,* 500 U.S. 90, 99, 111 S.Ct. 1711, 114 L.Ed.2d 152 (1991). See also *Malat v. Riddell*, 383 U.S. 569, 572 (1966)("Since the courts below applied the wrong legal standard, we do not consider whether the result would be supportable on the facts of this case had the correct one been applied.  We believe, moreover, that the appropriate disposition is to remand the case to the District Court, for fresh fact-findings, addressed to the statute as we have now construed it."

---

[24] *Id.* at 28–29.

21

In the event the Court determines that *Smith* applies (it does), Plaintiffs offer a final argument: the district court's imposition of the discretion and independent judgment standard of the standalone administrative exemption was "harmless error."[25]

The district court's application of an incorrect legal standard is not harmless "where the court would have reached a different result if it had correctly applied the law. *See Levi Strauss & Co. v. Abercrombie & Fitch Trading Co.*, 633 F.3d 1158. 1173–74 (9th Cir. 2011). *See also Ayestas v. Davis*, 138 S. Ct. 1080, 1085 (2018) ("We hold that the lower courts applied the wrong legal standard, and we therefore vacate the judgment below and remand for further proceedings."); *Maracich v. Spears*, 570 U.S. 48, 77 (2013) ("Because the Court of Appeals applied the wrong standard . . . the Court remands for application of the proper standard."). Clearly here the district court relied on its incorrect application of the independent judgment and discretion prong. ROA.2740-2742 ("The court concludes that Plaintiffs did not customarily and regularly exercise independent judgment and discretion with respect to matters of significance."). Plaintiffs have conceded this point. There is thus no way for this Court to determine what conclusion would have been reached below had the correct standard been applied.

---

[25] Plaintiffs' Brief at 237–38

# <u>CONCLUSION</u>

Plaintiffs have cast blame, changed the subject, played fast and loose with judicial precedent and employed an outright falsehood all in an attempt to avoid the consequence of one incontrovertible truth:  In direct contravention of this Court's decision in *Smith v. Ochsner*, the district court imposed and utilized the independent judgment and discretion prong of the standalone administrative exemption in its HCE exemption duties analysis and concluded based upon that flawed analysis that Plaintiffs did not qualify for the HCE exemption because their duties and responsibilities did not involve the exercise of discretion and independent judgment.

While Plaintiffs have conceded that the wrong standard was utilized by the district court, they claim "harmless error" and speculate that the district would have determined that the HCE exemption did not apply under the correct standard.  This is unsupportable.  The district court never considered binding Fifth Circuit precedent in *Smith v. Ochsner* and referenced "discretion and independent judgment" at least *sixteen* times in its Initial Findings of Fact and Conclusions of Law.  (ROA.2730-2748).  This is not a case where the court below made a passing incorrect statement of the law which pertained to a secondary or tertiary issue.

The district court wrongly concluded that Plaintiffs Gilchrist and Brockman were not exempt from the overtime requirements of the FLSA under the HCE exemption.  As noted *supra* and in the original brief of STC, Plaintiffs satisfy all of

the compensation requirements of the HCE exemption.  This is not disputed.

In reaching its conclusion that Plaintiffs were not exempt under the HCE exemption, the district court made two fundamental errors of law.  First, the district court utilized the independent judgment and discretion requirement of the standalone administrative exemption in its analysis and application of the HCE exemption under the FLSA.  This fact alone invalidates the conclusions reached by the district court with respect to its analysis of the applicability of the HCE exemption.  Second, the district court wrongly construed and applied controlling case law concerning the meaning of work directly related to the general business operations of STC or its customers.  As *Zannikos* makes clear, duties such as providing operational support services as part of team are not considered production work, but are administrative duties directly related to the general business operations of customers. These are fundamental errors of law, and this Court should thus reverse the judgment of the district court.

Additionally, Plaintiffs' own testimony on cross-examination, which is identical to the testimony of their own supervisors and documentary record evidence shows that Plaintiffs in fact did regularly and customarily perform at least one of the duties and responsibilities of an administrative employee and, thus, were exempt under the HCE.  As such, the district court's findings are, as discussed at length in STC's original briefing, implausible in the light of the record considered as whole,

and reversal is therefore also warranted on this basis.

SUBMITTED BY:

*/s/ Kelly D. Reese*

Robert P. Lombardi
Kelly D. Reese
**THE KULLMAN FIRM, P.L.C.**
1100 Poydras Street, Suite 1600
New Orleans, LA  70163
Telephone: (504) 524-4162
Facsimile: (504) 596-4189
E-Mail:  rpl@kullmanlaw.com
E-Mail:  kr@kullmanlaw.com

**Attorneys for Appellant**

## CERTIFICATE OF SERVICE

This is to certify that the foregoing instrument has been served via the Court's

ECF filing system in compliance with Rule 25(b) and (c) of the Federal Rules of

Appellate Procedure, on February 22, 2023, on all registered counsel of record, and

has been transmitted to the Clerk of the Court

.

*/s/ Kelly D. Reese*
KELLY D. REESE

# <u>CERTIFICATE OF COMPLIANCE</u>

1.  This document complies with the type-volume limit of FED. R. APP. P. 32(a)(7)(B) because:

- this brief contains 5,936 words, excluding the parts of the brief exempted by FED. R. APP. P. 32(f).

2.  This document complies with the typeface requirements of FED. R. APP. P. 32(a)(5), and 5th CIR. R32.1 and the type-style requirements of FED. R. APP. P. 32(a)(6) because:

- this brief has been prepared in a proportionally spaced typeface using Microsoft 365 Word Version 2206 with a 14 pt. font named Times New Roman.

*/s/ Kelly D. Reese*
KELLY D. REESE

26